UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA • ORLANDO DIVISION

DAVID W. FOLEY, JR., and JENNIFER T. FOLEY,
   *Plaintiffs*

v.

ORANGE COUNTY,
   *a political subdivision of Florida*, and
ASIMA AZAM, TIM BOLDIG, FRED BRUMMER,
RICHARD CROTTY, FRANK DETOMA,
MILDRED FERNANDEZ, MITCH GORDON,
TARA GOULD, CAROL HOSSFIELD,
TERESA JACOBS, RODERICK LOVE,
ROCCO RELVINI, SCOTT RICHMAN,
JOE ROBERTS, MARCUS ROBINSON,
TIFFANY RUSSELL, BILL SEGAL, PHIL SMITH,
and LINDA STEWART,
   *individually and together, in their personal*
   *capacities,*
   *Defendants*

*Case No.* 6:22-cv-456-CEM-EJK

COMPLAINT
FOR VIOLATION OF
CIVIL RIGHTS
Demand for a Jury Trial



**NATURE OF COMPLAINT**

1.   Orange County is constitutionally pre-empted by Article IV, Section 9, Florida Constitution, from regulating the possession and sale of captive exotic birds; this Court so held in <u>Foley et ux v. Orange County et al</u>, 6:12-cv-269-Orl-37KRS (M.D. Florida, August 13, 2013) ("Orange County cannot use its land use ordinances to regulate the [Foleys'] possession or sale of captive wildlife.").

2.   Orange County is also constitutionally pre-empted by Article VIII, Section 1(j), Florida Constitution, from prosecuting or punishing persons violating county ordinances except as provided by the Florida Legislature.

3.   Defendants trespassed both of these separation-of-powers provisions of the Florida Constitution when they prosecuted and punished the plaintiffs David and

Jennifer Foley (the Foleys) for an alleged violation of an un-codified prohibition of "raising birds to sell" as a *home occupation* in a proceeding that was not authorized by statute, and enjoined the Foleys from continuing to sell birds raised at their Solandra homestead.

4.      Florida's Ninth Judicial Circuit and Fifth District Court of Appeal have denied the Foleys any meaningful hearing on the application of Article IV, Section 9, and Article VIII, Section 1(j), Florida Constitution, to the defendants' unlawful injunction of the Foleys' right to sell birds, and also have denied relief under the takings provision of Article X, Section 6(a), Florida Constitution; this Court required the Foleys exhaust state-court takings remedies in <u>Foley et ux v. Orange County et al</u>, 6:12-cv-269-Orl-37KRS †8 (M.D. Florida, December 4, 2012) ("[The Foleys] must demonstrate that [they] unsuccessfully 'pursued the available state procedures to obtain just compensation' before bringing [their] federal [takings] claim.").

5.      The Foleys now press suit upon the defendants for compensatory relief pursuant Title 42 U.S. Code Section 1983, for their acts and omissions, under the color of ordinance, regulation, and custom, that subjected the Foleys, or caused them to be subjected, to the following constitutional deprivations:

a.      The regulatory, exactions, and business taking of personal property without due process, public purpose/use, or just compensation in violation of Amendment V, United States Constitution, as guaranteed by Amendment XIV, Section 1, United States Constitution; this Court

recommended a regulatory taking in <u>Foley et ux v. Orange County et al</u>, 6:12-cv-269-Orl-37KRS (M.D. Florida, December 4, 2012) ("The application of an invalid land use regulation may form the basis of a regulatory takings claim.");

b.      The deprivation of personal property by the denial of the adequate adversarial pre-deprivation process provided by Florida, and guaranteed by Amendment XIV, Section 1, United States Constitution; and,

c.      The complete deprivation by the State of Florida of the due process guaranteed by Amendment XIV, Section 1, United States Constitution.

6.      The Foleys request oral argument.

7.      The Foleys demand a jury trial.

## VENUE

8.      Venue lies with this court pursuant Title 28 U.S. Code Section 1391(b) as the acts and omissions giving rise to this complaint occurred in Orange County, Florida.

## JURISDICTION

9.      Jurisdiction lies with this court pursuant Title 28 U.S. Code Sections 1331 and 1343, to address the Foleys' claims arising under the laws and Constitution of the United States.

10.     This complaint is timely as to the defendants, incidents, and injuries at issue in Federal case 6:12-cv-00269-RBD-KRS, Florida case 2016-CA-007634-O, and Florida appellate case 5D21-0233, for the following reasons:

a.      All defendants in this case were sued in the same capacity in Federal case 6:12-cv-00269-RBD-KRS, Florida case 2016-CA-007634-O, and Florida appellate case 5D21-0233.

b.      The incidents in this case are the same as those in Federal case 6:12-cv-00269-RBD-KRS, Florida case 2016-CA-007634-O, and Florida appellate case 5D21-0233.

c.      The claims of constitutional injury presented in this complaint are subject to a four-year statutory limitation pursuant Section 95.11(3) (d), (h), (m), and/or (p) Florida Statutes.

d.      The takings claim presented is a continuing wrong claim that initially accrued February 19, 2008, the date the Orange County Board of County Commissioners (BCC) made its final decision in the Foleys' case, and remains timely with respect to that date for the following reasons:

1.      February 21, 2012, the Foleys timely filed their original complaint with this court in case 6:12-cv-00269-RBD-KRS, and pursuant Rule 6(a)(1), Federal Rules of Civil Procedure, that day was the last their complaint could be filed to satisfy any four-year statute of limitation beginning February 18, 2008 through February 21, 2008, and ending the holiday weekend of February 18, 2012 through February 21, 2012 –

4

February 20, 2012, a Monday, was Washington's Birthday, (Presidents' Day).

2.    July 27, 2016, this court dismissed case 6:12-cv-00269-RBD-KRS without prejudice for lack of federal question subject matter jurisdiction.

3.    August 25, 2016, the Foleys timely filed an original complaint with the Ninth Judicial Circuit Court of Florida in case 2016-CA-007634-O; the complaint was held timely per Title 28 U.S. Code §1367(d), as to the defendants, incidents and injuries at issue in Federal case 6:12-cv-00269-RBD-KRS, by the Florida Fifth District Court of Appeal in <u>Foley v. Azam</u>, 257 So.3d 1134 (5th DCA 2018).

4.    December 18, 2020, the Ninth Judicial Circuit Court of Florida denied rehearing of its order dismissing with prejudice case 2016-CA-007634-O.

5.    Today, the Florida Fifth District Court of Appeal in appellate case 5D21-0233, on rehearing affirmed the order of the Ninth Judicial Circuit Court of Florida in case 2016-CA-007634-O, without granting any of the jurisdictional predicates essential to review by Florida's Supreme Court.

e.    The takings claim, as a continuing wrong claim, otherwise has accrued continuously since the BCC's final order February 19, 2008, as the defendants have continuously defended that order.

5

      f.     The pre-deprivation procedural due process claim presented in this complaint attacks an administrative prosecution action, and an administrative prosecution custom, that were not authorized by, and violated, state law, and this claim accrues today with the denial of any post-deprivation remedy by the Fifth District Court of Appeal, as stated in paragraph 10-d-5 *supra*, and is otherwise timely with respect to any continuing injury accruing after the BCC's final order February 19, 2008, for the reasons stated in paragraphs 10-d, subparagraphs 1 through 5 *supra*.

11.    The claims and issues presented in this complaint are not barred or precluded by the judgments of Federal case 6:12-cv-00269-RBD-KRS, Florida case 2016-CA-007634-O, or Florida appellate case 5D21-0233, for the following reasons:

      a.     The Foleys restate paragraphs 10-a and b *supra*.

      b.     The Foleys have not previously asserted in federal or state court any cause of action against the defendants in Title 42 U.S. Code Section 1983, for the taking of personal property without public use or just compensation in violation of Amendment V, United States Constitution, as guaranteed by Amendment XIV, Section 1, United States Constitution.

      c.     The Foleys expressly reserved their claim in Amendment V, United States Constitution, on the record of the state court.

6

d.      The Foleys did not, and could not, assert in Federal case 6:12-cv-00269-RBD-KRS, any cause of action against the defendants in Title 42 U.S. Code Section 1983, for the denial of the adequate adversarial pre-deprivation process due and guaranteed by Amendment XIV, Section 1, United States Constitution.

e.      Both the Ninth Judicial Circuit Court in case 2016-CA-007634-O, and the Fifth District Court of Appeal in appellate case 5D21-0233, neglected, or failed, to make any ruling, expressly or by implication, on the Foleys' claim in Title 42 U.S. Code Section 1983, asserted in those courts and in this complaint, for the denial of pre-deprivation procedural due process guaranteed by Amendment XIV, Section 1, United States Constitution.

f.      Both the Ninth Judicial Circuit Court in case 2016-CA-007634-O, and the Fifth District Court of Appeal in appellate case 5D21-0233, neglected, failed, or refused to hear, or to make any express or implied ruling on, the following issues:

1.      The Foleys' personal property right to possess and sell birds asserted in those courts and in this complaint; or,

2.      The application to that right of Article IV, Section 9, and Article VIII, Section 1(j), Florida Constitution, urged in those courts and in this complaint.

7

## PARTIES

12.    Plaintiff David W. Foley, Jr., with his wife Jennifer T. Foley, owns a residence, and resides, at 1015 North Solandra Drive, Orlando, Florida, 32807-1931.

13.    Plaintiff Jennifer T. Foley, with her husband David W. Foley, Jr., owns a residence, and resides, at 1015 North Solandra Drive, Orlando, Florida, 32807-1931.

14.    Defendant Orange County is a political subdivision of Florida, created by the Florida Legislature pursuant Article VIII, Section 1(a), Florida Constitution, with administrative offices at 201 South Rosalind Avenue, Orlando, Florida, 32801, and a mailing address of P.O. Box 2687, Orlando, Florida 32802-2687.

15.    Defendant Asima Azam sat on the Board of Zoning Adjustment, November 1, 2007.

16.    Defendant Tim Boldig as Zoning Division Chief of Operations prosecuted the Foleys' case before the Board of County Commissioners, February 19, 2008.

17.    Defendant Fred Brummer sat on the Board of County Commissioners, February 19, 2008.

18.    Defendant Richard Crotty sat on the Board of County Commissioners as County Mayor, February 19, 2008.

19.    Defendant Frank Detoma sat on the Board of Zoning Adjustment, November 1, 2007.

20.   Defendant Mildred Fernandez sat on the Board of County Commissioners, February 19, 2008.

21.   Defendant Mitch Gordon as Zoning Manager recommended, participated in, defended, or knowingly acquiesced to the acts and omissions challenged in this complaint.

22.   Defendant Tara Gould as Assistant County Attorney, representing Orange County, and representing the Board of Zoning Adjustment November 1, 2007, recommended, participated in, defended, or knowingly acquiesced to the acts and omissions challenged in this complaint.

23.   Defendant Carol Hossfield as the Permitting Chief Planner recommended, participated in, defended, or knowingly acquiesced to the acts and omissions challenged in this complaint.

24.   Defendant Teresa Jacobs was President of the Florida Association of Counties (FAC) in 2007 and 2008, and sat on the Board of County Commissioners, February 19, 2008.

25.   Defendant Roderick Love sat on the Board of Zoning Adjustment, November 1, 2007.

26.   Defendant Rocco Relvini as Chief Planner prosecuted the Foleys' case before the Board of Zoning Adjustment, November 1, 2007.

27.   Defendant Scott Richman sat on the Board of Zoning Adjustment, November 1, 2007.

9

28.    Defendant Joe Roberts sat on the Board of Zoning Adjustment, November 1, 2007.

29.    Defendant Marcus Robinson sat on the Board of Zoning Adjustment, November 1, 2007.

30.    Defendant Tiffany Russell sat on the Board of County Commissioners, February 19, 2008.

31.    Defendant Bill Segal sat on the Board of County Commissioners, February 19, 2008.

32.    Defendant Phil Smith was the code enforcement inspector who originally investigated the citizen complaint against the Foleys, and prosecuted the Foleys before the Orange County code enforcement board.

33.    Defendant Linda Stewart sat on the Board of County Commissioners, February 19, 2008.

### FACTS

*Liberty interest*

34.    The Foleys have a right "to be let alone and free" of unauthorized regulation, per Article I, Section 23, Florida Constitution; it is a right that is given shape in this case by the separation of powers provision of the Florida Constitution, Article II, Section 3, as effectuated by Article IV, Section 9, Florida Constitution, and Article VIII, Section 1(j), Florida Constitution; and, it is a right that cannot be deprived without the process it is due, as guaranteed by Article I,

Section 9, Florida Constitution, and Amendment XIV, Section 1, United States Constitution.

35.    Article IV, Section 9, Florida Constitution, states in part: "The [Florida Fish and Wildlife Conservation] commission shall exercise the regulatory and executive powers of the state with respect to wild animal life." This provision of the Florida constitution and its antecedents have for seventy-eight years been consistently construed, by the doctrine *expressio unius est exclusio alterius,* to clearly establish that the regulatory subject matter jurisdiction of "wild animal life," including captive exotic birds, belongs exclusively to Florida's Fish and Wildlife Conservation Commission (FWC); Orange County is without police power to place preconditions specific to the nuisance associated with animals on the Foleys' possession or sale of captive exotic birds.

36.    Article VIII, Section 1(j), Florida Constitution, states: "Persons violating county ordinances shall be prosecuted and punished as provided by law." The terms of this constitutional provision are simple and clear; they give Florida's Legislature exclusive authority to determine the procedures to be used to prosecute and punish violations of county ordinances; Orange County is without authority to prosecute or punish the Foleys for code violations except as provided by Florida's Legislature.

### *Property interest*

37.    The Foleys have a right "to acquire, possess and protect property," per Article I, Section 2, Florida Constitution; it is a right that cannot be deprived

without the process it is due, as guaranteed by Article I, Section 9, Florida Constitution, and Amendment XIV, Section 1, United States Constitution.

38.   The Foleys have since December 20, 1990, owned a homestead in Orange County at 1015 North Solandra Drive, Orlando, Florida, zoned R-1A (Solandra homestead).

39.   The Foleys have since April 26, 2010, owned a manufactured home in Orange County on one acre at 1349 Cupid Road, Christmas, Florida, zoned A-2 (Cupid property).

40.   The Foleys have since 2000, owned and kept a small breeding flock of toucans (Collared aracari, *Pteroglossus torquatus*), at their Solandra homestead.

41.   Between 2002 and 2008, the Foleys advertised and sold 46 offspring of these toucans in interstate commerce for approximately $900 each.

42.   All sales were facilitated by internet advertising, the Foleys' website diostede.com, and a regular classified ad that ran two years in the national pet bird magazine BirdTalk.

43.   February 19, 2008, the Foleys had twenty-two (22) toucans at their Solandra homestead.

44.   David Foley has since 2007, held a site-specific FWC Class III license for the Solandra homestead, issued by the Florida Fish and Wildlife Conservation Commission, per Rule 68A-6.003(6), Florida Administrative Code.

45.    David Foley has since 2010, held a site-specific FWC Class III license for the Cupid property, issued by the Florida Fish and Wildlife Conservation Commission, per Rule 68A-6.003(6), Florida Administrative Code.

46.    The Foleys established their breeding flock at the Solandra homestead, and David Foley secured a site-specific FWC Class III licence for the Solandra homestead, in order to sell the birds raised at the Solandra homestead.

47.    The Foleys bought the Cupid property, and David Foley secured a site-specific FWC Class III licence for the Cupid property, in order to move and/or expand the Foleys' bird business to the Cupid property.

48.    On or about the day this complaint was filed, toucan farmers in the United States, were offering captive-bred Collared aracari, *Pteroglossus torquatus*, for sale at between $2,500 and $3,500 per bird, plus shipping.

### *Controversy*

49.    The defendants deprived the Foleys of their *aviary* and their *aviculture* business in an administrative prosecution that violated both the substantive restraint on county regulatory authority in Article IV, Section 9, Florida Constitution, and the procedural restraint on county prosecution and punishment of code violations in Article VIII, Section 1(j), Florida Constitution.

50.    The defendants, in doing so:

    a.    effected a regulatory and exactions taking of the Foleys' *aviary*, birds, and bird business without the public purpose/use or the just compensation required by Amendment V, United States Constitution; and,

13

b.      deprived the Foleys of their right to sell birds without providing the Foleys the adequate adversarial pre-deprivation remedy due that right, as required by Amendment XIV, Section 1, United States Constitution.

### *Procedural context*

51.    The defendants knew, or should have known, the following:

a.      No Orange County ordinance, or published order or rule:

1.      expressly prohibited *aviaries* as an *accessory structure* at the Foleys' R-1A Solandra homestead;

2.      expressly prohibited *aviculture*, *aviculture (commercial)*, or "raising birds to sell," as an *accessory use* or *home occupation* at the Foleys' R-1A Solandra homestead; or,

3.      put the Foleys on notice of such prohibitions.

b.      Chapter 11, Orange County Code (the Orange County Code Enforcement Board Ordinance), was the only administrative process codified by Orange County for the prosecution and punishment of alleged code violations that was consistent with Article VIII, Section 1(j), Florida Constitution.

c.      No provision of the Orange County Code authorizes the denial of a building permit on the basis of an un-adjudicated, alleged code violation.

d.      State court review of any unauthorized administrative prosecution and punishment of allege code violations is limited by state judicial policy to a restricted form of certiorari that cannot:

1.   reach the constitutionality of any substantive right effected;

2.   correct any denial of the process due that right; or,

3.   provide any post-deprivation remedy.

### *Procedural history*

52.   March 15, 2002, four-term Florida Attorney General Bob Butterworth, in Attorney General Opinion 2002-23, surveyed Florida judicial decisions to specifically conclude that county government is "prohibited by Article IV, section 9, Florida Constitution ... from enjoining the possession, breeding or sale of non-indigenous exotic birds."

53.   February 23, 2007, a private citizen initiated defendants' prosecution of the Foleys by filing a complaint with Orange County that alleged the Foleys were "raising birds to sell."

54.   Defendant Phil Smith investigated the citizen complaint and gathered evidence that the Foleys:

a.   were "raising birds to sell;" and,

b.   had built an *aviary* without a building permit.

55.   Defendants Phil Smith and Carol Hossfield discussed the following:

a.   the evidence collected;

b.   the two code violations that evidence represented; and,

c.   how to proceed with the prosecution of those two code violations.

56.    Phil Smith and/or Carol Hossfield were required to initiate any administrative prosecution of the two code violations pursuant Chapter 11, Orange County Code.

57.    Phil Smith did not use the procedures of Chapter 11, Orange County Code, to prosecute the Foleys for a violation of any prohibition of, or restriction upon:

     d.    "raising birds to sell;"

     e.    *aviculture*;

     f.    *aviculture (commercial)*;

     g.    *aviary*; or,

     h.    building an *aviary* without a building permit.

58.    Phil Smith, instead, used the procedures of Chapter 11, in code enforcement board (CEB) case 2007-66690Z, solely to prosecute the Foleys for building a "structure," or "accessory structure," without a building permit.

59.    Phil Smith, in CEB case 2007-66690Z, presented no evidence, and made no attempt to suggest, to the code enforcement board that the "structure" at issue was:

     a.    an *aviary*;

     b.    used for "raising birds to sell;"

     c.    used for *aviculture*; or,

     d.    used for *aviculture (commercial)*;

60.    April 18, 2007, at hearing, the code enforcement board, in CEB case 2007-

66690Z, ordered the Foleys to do one of the following, on or before June 17,

2007:

      a.    get a permit for the "structure;"

      b.    destroy the "structure;" or,

      c.    pay a fine of $500/day.

61.    The code enforcement board refused the Foleys' request for more time to

comply.

62.    The conclusions of law in the written order of the code enforcement board,

in CEB case 2007-66690Z, stated the following:

> The Code Enforcement Board finds the Respondent, FOLEY DAVID
> W JR & FOLEY JENNIFER T to be in violation of:
>
> 38-3, 38-74, 38-77 Building, structure, or land use erected or used
> without obtaining building permit(s) and or land use permit.
>
> Obtain building permit(s) and or land use permit or remove illegal
> use and or structure or alterations from property.

63.    Section 553.79(1)(a), Florida Statutes, requires a permit for all structures,

and predictably denied the Foleys any basis for an appeal of the building permit

requirement in the CEB order. It states:

> After the effective date of the Florida Building Code adopted as
> herein provided, it shall be unlawful for any person, firm,
> corporation, or governmental entity to construct, erect, alter, modify,
> repair, or demolish any building within this state without first
> obtaining a permit therefor from the appropriate enforcing agency or
> from such persons as may, by appropriate resolution or regulation of
> the authorized state or local enforcing agency, be delegated authority

> to issue such permits, upon the payment of such reasonable fees adopted by the enforcing agency.

64.    The CEB order itself, by making no mention of *aviary*, *aviculture*, or "raising birds to sell," predictably denied the Foleys any basis for an appellate challenge to Orange County's regulation of *aviary*, *aviculture*, or "raising birds to sell," for conflict with Article IV, Section 9, Florida Constitution.

65.    The Foleys, nevertheless, did appeal the CEB order to clarify the vagueness of its undifferentiated reference to dozens of pages in the Orange County Code, and its multiple use of "(s)", "or", and "and or," in an attempt to establish that the CEB had made no *sub silentio*, or implied, ruling on *aviary* or *aviculture* that could be challenged for conflict with Article IV, Section 9, Florida Constitution.

66.    The order of the Ninth Judicial Circuit, on review of the CEB order, in appellate case CVA1 07-37, did not find any ruling in that order on *aviary*, *aviculture, aviculture (commercial)*, or "raising birds to sell."

67.    In case CVA1 07-37, the court simply found, "The structures at issue are several large bird cages used by Appellants to raise and maintain exotic birds."

68.    When David Foley went to Orange County's permitting counter to comply with the CEB order and to apply for a permit for the Foleys' existing "structure," Carol Hossfield, confronted him with the evidence Phil Smith had collected during his investigation of the citizen complaint prior to the CEB hearing, but had never presented to the Foleys or to the CEB.

18

69.    Carol Hossfield, at the permitting counter, claimed this evidence proved the Foleys' "structure" was an *aviary* used for *commercial aviculture* in violation of the County's un-codified prohibition of *aviary* as an *accessory structure* (*aviary* custom) and the County's un-codified prohibition of *commercial aviculture* as a *home occupation* (*aviculture* custom).

70.    Carol Hossfield then, at Orange County's permitting counter, without the notice or hearing required, adjudicated the Foleys guilty of violating the County's un-codified *aviary* and *aviculture* customs, and on that basis punished the Foleys by denying the permit required by the CEB order.

71.    The Foleys offered to comply with Orange County's un-codified prohibition of *aviculture (commercial)* as a *home occupation*:

a.    If doing so would secure the building permit before the compliance date of the CEB order, June 17, 2007; and,

b.    Because per Rule 68A-6.01215(3), Florida Administration Code, the Florida Fish and Wildlife Conservation Commission (FWC) required the Foleys to provide their twenty-two (22) toucans with enclosures (cages/*aviaries*) having dimensions equal to (or greater than) those of the Foleys' existing *aviaries*.

72.    Carol Hossfield, after talking with a representative of the Florida Fish and Wildlife Conservation Commission, did the following:

c.    She conceded that Orange County could not prohibit an *aviary*;

d.    She nevertheless refused to accept the Foleys' offer; and,

19

      e.     She required the Foleys to secure a determination from defendant Mitch Gordon as a pre-condition to a building permit.

73.    April 23, 2007, the Foleys began the administrative review of Carol Hossfield's permit denial by requesting Mitch Gordon determine whether an *aviary* was prohibited as an *accessory structure*, or *commercial aviculture* was prohibited as a *home occupation*.

74.    May 17, 2007, the Florida Fish and Wildlife Conservation Commission released a Memorandum of Law, entitled "Local Ordinances and the Regulation of Captive Wildlife," which (1) was written in response to contemporaneous legislative initiatives of the *Florida Association of Counties* to increase regulation of exotic animals, (2) surveyed all relevant Florida judicial decisions dating to 1960 regarding the exclusive regulatory authority over "wild animal life" granted to the commission by Article IV, Section 9, Florida Constitution, and (3) concluded, "Local government is prohibited by the constitution, statute and rules from prohibiting the possession, breeding or sale of captive wildlife."

75.    May 21, 2007, on or about, defendant Tara Gould provided defendants Mitch Gordon and Mildred Fernandez with a memorandum of law regarding "Aviaries and Aviculture within the R-1A Zoning District" in which she cited Attorney General Opinion 2002-23, referenced in paragraph 52 *supra*, but nevertheless concluded *aviculture* is a land use the county can regulate.

76.    July 2, 2007, Mitch Gordon issued his determination which said, in pertinent part, the following:

Based upon the information that ... we've obtained from the Code Enforcement Division staff, the use of the property at 1015 Solandra Drive for aviculture with aviaries is not a permitted use in the R-1A zoning district.

...

The Attorney's Office found that Orange County has the authority to designate the permitted uses of land, including the location and extent of the uses of land for commercial purposes in this case aviculture.

...

The fact that the definition of home occupation specifically excludes commercial kennels, is a clear indication that commercial aviculture is not permitted as a home occupation.

...

An accessory structure to house a pet bird may be erected in conformance with the provisions in Section 38-77 (114) ...

77.     The Foleys were ultimately forced to destroy their *aviaries* to comply with the CEB order, and to make other accommodations for their twenty-two (22) toucans, for the following reasons:

a.      Carol Hossfield, on multiple occasions, refused to consider the Foleys' offer stated in paragraph 71 *supra*, including subparagraphs;

b.      Carol Hossfield refused to grant a permit prior to Mitch Gordon's determination as stated in paragraph 72 *supra*; and,

c.      Mitch Gordon, as stated in paragraph 76 *supra*, delayed the release of that determination for ten (10) weeks, and did not release it until two (2) weeks after the June 17th compliance date of the CEB order, and a full six (6) weeks after Tara Gould advised him with the memorandum reference in paragraph 75.

78.    October 4, 2007, the defendant members of the Orange County Board of Zoning Adjustment (BZA), identified in paragraphs 15, 19, 25, 27, 28, and 29 *supra*, in the Foleys' case ZM-07-10-010, unanimously upheld the basis for Carol Hossfield's permit denial, and Mitch Gordon's determination, as prosecuted, defended, and recommended by defendants Rocco Relvini and Tara Gould, in their order stating:

> *Aviculture* with associated *aviaries* is not permitted as a *principal use* or *accessory use* ... [or] ... as a *home occupation* in the R-1A (single-family - 7.500 sq. ft. lots) zone district.

79.    November 30, 2007, Carol Hossfield offered to approve a site-plan and building permit to re-construct the Foleys' *aviaries*, if David Foley would sign an exaction on the face of the site-plan and building permit stating: "Pet Birds Only – No Commercial Activity Permitted."

80.    The Foleys, now under duress, agreed and David Foley signed the exaction in order to rebuild the *aviaries* that Carol Hossfield had previously forced them to destroy when she rejected, as stated in paragraphs 71 and 77 *supra*, the very terms and conditions she now offered in the exaction.

81.    February 19, 2008, the defendant members of the Orange County Board of County Commissioners (BCC), identified in paragraphs 17, 18, 20, 24, 30, 31, and 33 *supra*, unanimously approved the order of the BZA, as prosecuted, defended, and recommended by defendant Tim Boldig, and in their final order made the same ruling:

> *Aviculture* with associated *aviaries* is not permitted as a *principal use* or *accessory use* ... [or] ... as a *home occupation* in the R-1A (single-family - 7.500 sq. ft. lots) zone district.

82.    The Foleys are still to this day required to obey the BCC's February 2008,

order for the following reasons:

    a.    Section 30-49(c), Orange County Code, threatens punishment for

any failure "to abide by and obey all orders" of the Board of County

Commissioners:

> Any person violating any of the provisions of this article or who shall fail to abide by and obey all orders and ordinances promulgated as herein provided shall be punished as provided in section 1-9. Each day that the violation continues shall constitute a separate violation.

    b.    Section 1-9, Orange County Code, provides for substantial

punishment for any failure to abide by and obey all orders of the Board of

County Commissioners:

> Except as otherwise provided by law or ordinance, a person convicted of a violation of this Code shall be punished by a fine not to exceed five hundred dollars ($500.00) or by imprisonment in the county jail for a term not exceeding sixty (60) days, or by both such fine and imprisonment. With respect to violations of this Code that are continuous with respect to time, each day the violation continues is a separate offense.

83.    Orange County, and every administrative employee and official, identified

in paragraphs 15 through 31, and 33 *supra*, before making a final decision to

enjoin, or to assist enjoining, or to act in common design to enjoin, the Foleys'

sale of birds:

23

a.    Rejected the attorney general opinion referenced in paragraph 52 *supra*, provided to them by the Foleys;

b.    Rejected the FWC legal memorandum referenced in paragraph 74 *supra*, provided to them by the Foleys;

c.    Knew, or should have known, and did misrepresent or conceal from the Foleys, that their actions were an unauthorized prosecution of the *aviary* and *aviculture* customs, that would punish the Foleys by destroying their *aviary* and bird business, and that would deny the Foleys any adequate pre-deprivation remedy, as stated in paragraphs 51 *supra*, including subparagraphs.

d.    Had the authority, duty, experience, evidence, and specific opportunities to remove any doubt regarding their authority to enjoin bird possession, advertising, or sale, and/or to counsel or recommend the removal of any such doubt, by means of an adequately adversarial pre-deprivation proceeding, pursuant Chapter 11, Orange County Code, or otherwise, as required by Article VIII, Section 1(j), Florida Constitution, but neglected the duty of reasonable care they owed the Foleys, and did not do so.

84.    The Foleys petitioned the Ninth Judicial Circuit Court of Florida for first-tier certiorari of the BCC order in case 08-CA-5227-O, for the following reasons:

a.    Certiorari is the only review Florida courts provide an order of a board of county commissioners.

24

   b.    Florida's legislature has provided no statutory appeal of an order of a

board of county commissioners.

85.    October 21, 2009, in case 08-CA-5227-O, the Ninth Circuit held that on

certiorari of the BCC order the Foleys could not challenge Orange County's

regulation of the possession or sale of birds for conflict with Article IV, Section 9,

Florida Constitution:

> Petitioners assertion that sections of the Orange County Zoning Code
> are unconstitutional is one which can only be made in a separate
> legal action, not on certiorari review. See Miami-Dade County v.
> Omnipoint Holdings, Inc., 863 So.2d 195 (Fla. 2003).

86.    October 8, 2010, Florida's Fifth District Court of Appeal on second-tier

certiorari in case SD09-4195, affirmed without opinion the Ninth Circuit's denial

of first-tier certiorari in case 08-CA-5227-O.

87.    The Foleys subsequently sought post-deprivation declaratory, injunctive,

and compensatory relief in federal court, and then in state court, as stated in

paragraphs 4, 10, and 11 *supra*, including subparagraphs.

88.    Florida's Ninth Judicial Circuit Court in case 2016-CA-007634-O, and the

its Fifth District Court of Appeal in appellate case 5D21-0233, denied the Foleys

due process when they turned a deaf ear to the substance of the Foleys' claims, as

stated in paragraph 11-f, subparagraphs 1 and 2, and denied the Foleys a

meaningful hearing on the application of Article IV, Section 9, and Article VIII,

Section 1(j), Florida Constitution, to the defendants' injunction of the Foleys'

right to sell birds.

### *Procedural custom*

89.    Discovery will confirm that, as a matter of un-codified custom (enforcement custom), when Orange County, or its agent or employee, finds a colorable, or alleged, use violation in association with a building permit violation, as in the Foleys' case, the County, through its agent or employee:

    a.    prosecutes only the building permit violation before the code enforcement board, and not the associated use violation, and does so to secure an order that requires only a building permit; then,

    b.    at its permitting counter, in violation of Article VIII, Section 1(j), Florida Constitution, adjudicates the associated use violation that was not noticed or heard by the code enforcement board; and,

    c.    on the basis of this unlawful adjudication, denies the building permit required by the very order it secured from the code enforcement board; and in doing so,

    d.    predictably confines any administrative challenge to this unlawful adjudication to its own lengthy, multi-level, fee-based forum; and,

    e.    predictably confines any subsequent state-court challenge to review by certiorari which, as a matter of historic judicial policy, and as confirmed in the Foleys' case at paragraph 85 *supra*, denies any pre-deprivation remedy for any property deprivation associated with this unauthorized enforcement custom.

### *Damages*

90.    The defendants' actions as described herein, and the resulting final order of the Board of County Commissioners (BCC) February 19, 2008, effected a complete taking and deprivation of the following:

   a.    The Foleys' personal property right in the lost value of the twenty-two (22) toucans the Foleys had February 19, 2008, when the BCC issued its order effectively prohibiting their sale (approximately $55,000 to $77,000, based upon paragraph 48);

   b.    The Foleys' personal property right in the business income of the bird business established in 2000 at the Foleys' Solandra homestead where David Foley's FWC Class III license and the rules of the FWC permitted him to keep birds for sale that the BCC order effectively destroyed (approximately $692,500 to $848,238, based upon a static level of production/sales equal that of the last full year of operation, a pro-rated increase in price to meet that of paragraph 48, and statutory interest, over fourteen (14) years);

   c.    The Foleys' personal property right in the business income of the bird business David Foley planned to expand to the Foleys' Cupid property where David Foley's FWC Class III license and the rules of FWC permitted him to keep birds for sale, but for the County's demand of exactions specific to *commercial aviculture* and Standard Industrial Classification

27

0279 "Animal Specialties, Not Elsewhere Classified," at the Cupid property, in conflict with Article IV, Section 9, Florida Constitution;

d.      The Foleys' personal property right in the costs associated with the maintenance of David Foley's FWC Class III licenses to sell birds, from February 19, 2008, to the present day (approximately $1,300);

e.      The Foleys' personal and intangible property right in the reputation and goodwill of the Foleys' bird business;

f.      The Foleys' personal property right in the expenses and administrative and court costs incurred in the vindication of their rights (approximately $6,800);

## COUNT ONE: TAKING

PLAINTIFFS ALLEGE:

91.     And restate, paragraphs 1 through 90 *supra*, including subparagraphs, and referenced paragraphs.

92.     The defendants identified in paragraphs 14 through 33 *supra*, by the proceedings described in paragraphs 53 through 81 *supra*, and the final order of its Board of County Commissioners February 19, 2008, under the color of Orange County ordinance, regulation, and/or *aviary*, *aviculture*, and *enforcement* customs, exacted the forfeiture of the constitutionally protected liberty interests asserted in paragraphs 34 through 36 *supra*, in exchange for permission to exercise the property rights asserted in paragraphs 37 through 48 *supra*, within the confines of that unconstitutional exaction, and consequently subjected the

28

Foleys, or caused the Foleys to be subjected, to a taking of all value in the personal property described in paragraph 90 *supra*, including all subparagraphs.

93.    The taking was deprived police power, *id est* public purpose/use, by Article IV, Section 9, Florida Constitution, as stated in paragraphs 1, 35, 52, and 74 *supra*.

94.    The taking was without the due process guaranteed by Amendment V, and Amendment XIV, Section 1, United States Constitution for the following reasons:

a.    Orange County did not codify, memorialize, or in any way give the Foleys notice of its prohibition of "raising birds to sell," or *aviculture*, or *aviculture (commercial)* as an *accessory use* or *home occupation* prior to its enforcement;

b.    Orange County had no substantive authority over the Foleys' *aviary* qua *aviary*, or *aviculture* business, as stated in paragraph 93 *supra*, including referenced paragraphs and subparagraphs;

c.    The defendants identified in paragraphs 15 through 33 *supra*, denied the Foleys the adequate adversarial pre-deprivation remedy Orange County made available in Chapter 11, Orange County Code, as required by Article VIII, Section 1(j), Florida Constitution, for the infraction alleged in the citizen complaint, identified in paragraph 53 *supra*;

d.    The exaction of compliance and further impairment of the Foleys' personal property rights in the proceedings described in paragraphs 53

through 81 *supra*, and the resulting enforceable order, denied the Foleys their right to:

      1.    a pre-deprivation stay of the exaction and order pending administrative and state-court review; and,

      2.    a pre-deprivation state-court challenge to the constitutional validity of the exaction, the exaction review procedure, the resulting order, and the regulation they enforced.

      e.    Florida's Ninth Judicial Circuit in case 2016-CA-007634-O, and Fifth District Court of Appeal in appellate case 5D21-0233, have denied relief in Article X, Section 6(a), Florida Constitution, for regulatory, exactions, and business takings.

95.    The taking of the *aviculture* business at the Solandra property could not feasibly be mitigated by relocating the business elsewhere in Orange County because doing so would also require the Foleys to forfeit the constitutionally protected liberty interests asserted in paragraphs 34 and 35 *supra*, by submitting to the exaction of *special exception* fees, required by Sections 38-1, 38-74(b)(3), 38-77, and 30-48.5, Orange County Code, for the possibility of administrative approval by the board of zoning adjustment ($1316.00), or on appeal by the board of county commissioners ($671.00), in exchange for nothing more than the hope and prayer Orange County would grant the Foleys permission, over any community objection, to do what Orange County cannot prohibit or regulate as stated in paragraphs 1, 35, 52, and 74 *supra*.

96.    The taking was without compensation.

**WHEREFORE**, the Foleys request this court,

> **GRANT JUDGMENT**, against the defendants, in an amount to be
> determined at trial by jury, **PURSUANT** Title 42 U.S. Code Section 1983,
> for denial of the Foleys' rights in Amendment V, United States Constitution,
> as guaranteed by Amendment XIV, Section 1, United States Constitution.

## COUNT TWO: DUE PROCESS

**PLAINTIFFS ALLEGE:**

97.    And restate, paragraphs 1 through 90 *supra*, including subparagraphs, and
referenced paragraphs.

98.    Orange County, and the defendants identified in paragraphs 15 through 33
*supra*, by their recommendation or defense of, or by their acquiescence or
participation in, the unlawful prosecution and punishment of the Foleys for
"raising birds to sell," as described in in paragraphs 53 through 81 *supra*, or by
their affirmance of that unauthorized *enforcement* action, or custom, in the final
order of the Board of County Commissioners February 19, 2008, did under the
color of Orange County ordinance, regulation, and/or *aviary*, *aviculture*, and
*enforcement* customs, deprive the Foleys of the liberty interests asserted in
paragraphs 34 through 36 *supra*, and of all value in the personal property
described in paragraph 90 *supra*, including all subparagraphs, by subjecting the
Foleys, or causing the Foleys to be subjected, to a denial of the adequate

31

adversarial pre-deprivation process due those liberty and property rights, as guaranteed by Amendment XIV, Section 1, United States Constitution.

99.    The defendants prosecution and punishment, and its resulting deprivation of liberty and property rights, denied the Foleys the adequate adversarial pre-deprivation process due those rights, as guaranteed by Amendment XIV, Section 1, United States Constitution, for the following reasons:

a.    Orange County did not codify, memorialize, or in any way give the Foleys pre-enforcement notice of its prohibition of "raising birds to sell," or *aviculture*, or *aviculture (commercial)* as an *accessory use* or *home occupation* prior to its enforcement of that prohibition;

b.    The Foleys were not required by county ordinance or state law to ask Orange County for its pre-approval, or permission to raise birds to sell, or to pursue the vocation of *aviculture*.

c.    The defendants identified in paragraphs 15 through 33 *supra*, denied the Foleys the adequate adversarial pre-deprivation remedy Orange County made available in Chapter 11, Orange County Code, as required by Article VIII, Section 1(j), Florida Constitution, for the infraction alleged in the citizen complaint, identified in paragraph 53 *supra*;

d.    The defendants' unlawful prosecution and punishment of the Foleys under the color of the *aviary*, *aviculture*, and *enforcement* customs described in paragraphs 53 through 81 *supra*, and the resulting enforceable

32

order of its Board of County Commissioners (BCC), denied the Foleys their

right to:

    1.    a pre-deprivation stay of the permit exaction and BCC order

pending administrative and state-court review; and,

    2.    a pre-deprivation state-court challenge to the constitutional

validity of the exaction, the exaction review procedure, the resulting BCC

order, and the *aviary* and *aviculture* custom they enforced.

100.  Orange County, and the defendants identified in paragraphs 15 through 33

*supra*, have subjected the Foleys, or caused the Foleys to be subjected, to a denial

by the state of Florida of an adequate post-deprivation hearing on the application

of Article IV, Section 9, and Article VIII, Section 1(j), Florida Constitution, to the

defendants' unlawful injunction of the Foleys' right to sell birds, as stated in

paragraphs 4, 11-f including subparagraphs, 84 through 88 including

subparagraphs, 89-e, and 94-e.

**WHEREFORE**, the Foleys request this court,

    **GRANT JUDGMENT**, against the defendants, in an amount to be

    determined at trial by jury, **PURSUANT** Title 42 U.S. Code Section 1983,

    for denial of the Foleys' right to due process guaranteed by Amendment XIV,

    Section 1, United States Constitution.

## PRAYER FOR RELIEF

101.    WHEREFORE, The Foleys respectfully request that this Court enter judgment providing the following relief:

102.    Award just compensation as determined at trial;

103.    Award damages as determined at trial;

104.    Award punitive damages as determined at trial;

105.    Award interest on such damages as allowed by law;

106.    Award costs of suit and attorneys fees as allowed by law; and,

107.    Such other relief as the court deems just and proper.

## DEMAND FOR JURY TRIAL

108.    Plaintiffs demand, pursuant Rule 38(b), Federal Rules of Civil Procedure, a jury trial for all issues triable by jury.

## RULE 11 CERTIFICATE

PLAINTIFFS DAVID FOLEY AND JENNIFER FOLEY, by signing below, certify to the best of their knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint

34

otherwise complies with the requirements of Rule 11, Federal Rules of Civil Procedure.

### CERTIFICATE OF PARTIES WITHOUT AN ATTORNEY

PLAINTIFFS DAVID FOLEY AND JENNIFER FOLEY agree to provide the Clerk's Office with any changes to our address where case-related papers may be served. We understand that our failure to keep a current address on file with the Clerk's Office may result in the dismissal of our case.

### CERTIFICATE OF SERVICE

PLAINTIFFS CERTIFY that on March 3 , 2022, a copy of the foregoing and a request to waive service of summons was sent by U.S. Mail to the following:

Linda S. Brehmer Lanosa, Assistant Orange County Attorney
201 S. Rosalind Av., 3rd Floor, Orlando FL, 32801

Asima Azam
4317 New Broad Street, Orlando FL, 32814

Tim Boldig
155 South Court Avenue, Apartment 1716, Orlando FL, 32801

Fred Brummer
191 East Ponkan Road, Apopka FL, 32703

Richard Crotty
6642 The Landings Drive, Belle Isle FL, 32812

Frank Detoma
2290 Tuscarora Trail, Maitland FL, 32751

Mildred Fernandez
6029 Lake Pointe Drive, Apartment 203, Orlando FL, 32822

Mitch Gordon
8807 Hackney Prairie Road, Orlando FL, 32818

Tara Gould
662 Selkirk Drive, Winter Park FL, 32792

Carol Hossfield
4855 Tellson Place, Orlando FL, 32812

Teresa Jacobs
8652 Sugar Palm Court, Orlando FL, 32835

Roderick Love
15 Salvo Place, Apopka FL, 32712

Rocco Relvini
5144 Fillmore Place, Sanford FL, 32773

Scott Richman
2018 Lake Fischer Cove Lane, Gotha FL, 34734

Joe Roberts
622 Pinar Drive, Orlando FL, 32825

Marcus Robinson
4605 Cason Cove Drive, Apartment 123, Orlando FL, 32811

Tiffany Russell
425 North Orange Avenue, Suite 2110, Orlando FL, 32801

Bill Segal
1820 Windsor Drive, Winter Park FL, 32789

Phil Smith
16459 Sunflower Trail, Orlando FL, 32828

Linda Stewart
4206 Inwood Landing Drive, Orlando FL, 32812

David W. Foley, Jr.

Jennifer T. Foley

Dated: March 3 , 2022

Plaintiffs
1015 N. Solandra Dr.
Orlando, FL 32807-1931
PH: 407 721-6132 • FX: none
e-mail: david@pocketprogram.org
e-mail: jtfoley60@hotmail.com

36